UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VANESS GARDNER,<br><br>　　　Plaintiff,<br><br>v.<br><br>CAPE COD HEALTHCARE, INC., and<br>AMN SERVICES, LLC d/b/a ONWARD<br>HEALTHCARE,<br><br>　　　Defendants. | CIVIL ACTION NO. |

## COMPLAINT AND JURY DEMAND

Plaintiff Vaness Gardner ("Mr. Gardner"), by way of Complaint against defendants Cape Cod Healthcare, Inc. ("CCH") and AMN Services, LLC d/b/a Onward Healthcare ("Onward," and together with CCH, the "Defendants"), hereby alleges as follows:

### PARTIES

1.　Mr. Gardner is an individual residing in Jacksonville, Florida.

2.　Defendant CCH is a corporation organized under the laws of the Commonwealth of Massachusetts and has a principal place of business located in Hyannis, Massachusetts.

3.　Based on information and belief, Onward is a limited liability company organized under the laws of the State of North Carolina and has a principal place of business located in San Diego, California.

4.　Based on information and belief, Onward's sole member is AMN Healthcare, Inc., which is a corporation organized under the laws of the State of Nevada and has a principal place of business located in San Diego, California.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this civil action pursuant to both 28 U.S.C. §§ 1331 and 1332, and supplemental jurisdiction exists over Mr. Gardner's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to this civil action occurred in this judicial district.

## FACTS

7. Mr. Gardner is a fifty-six (56) year old black man and a veteran of the U.S. Army.

8. Onward is a healthcare staffing firm that contracts with hospitals, clinics, and other healthcare facilities across the country in filling their staffing needs, which may include registered nurses, vocational nurses, technologists, and therapists.

9. CCH provides health services with two acute care hospitals (Cape Cod Hospital and Falmouth Hospital), homecare and hospice services, a nursing and rehabilitation facility, an assisted living facility, patient centers for laboratory services, and numerous health services through physician practices, Urgent Care Centers, Wound and Pain Centers, Behavioral Health facilities, and other health programs.

10. Cape Cod Hospital is an acute care hospital located in Hyannis, Massachusetts, and is an affiliate of CCH.

11. In or about February 2011, Onward located and placed Mr. Gardner into an employment position at CCH where he began as an open-heart surgical technician.

12. In or about October 2012, Mr. Gardner received a new position of operating room technologist within CCH's Surgical Services Department.

13. On or about September 2, 2016, Mr. Gardner voluntarily resigned from his position at CCH.

14. In 2019, Mr. Gardner was placed into his old position as an operating room technologist at CCH by Onward.

15. At all relevant times hereto, Mr. Gardner worked in CCH's Cape Cod Hospital.

16. Based on information and belief, at all relevant times both Defendants possessed the ability to hire and fire Mr. Gardner.

17. Based on information and belief, at all relevant times CCH supervised and controlled Mr. Gardner's work schedules.

18. Based on information and belief, at all relevant times both Defendants supervised the condition of Mr. Gardner's employment.

19. Based on information and belief, at all relevant times both Defendants determined Mr. Gardner's rate and method of payment.

20. Based on information and belief, at all relevant times both Defendants maintained Mr. Gardner's employment records.

### *CCH Discriminates Against Mr. Gardner*

21. On March 5, 2021, while working in the operating room with Dena Richerson, Mr. Gardner observed that she seemed upset about something, which persisted throughout the day. Mr. Gardner reported Ms. Richerson's behavior to the Assistant Charge Nurse, Mark Petterson.

22. On March 8, 2021, Mr. Gardner was called into the office of his manager, Lisa Johnson, who stated that Ms. Richerson claimed he "said something inappropriate to her and he was sexually harassing her." Mr. Gardner immediately responded that this allegation was "100%

a lie." Ms. Johnson then recommended that Mr. Gardner stay clear of Ms. Richerson, which he did.

23. Mr. Gardner has not spoken to or worked with Ms. Richerson in any capacity since March 5, 2021.

24. On March 18, 2021, Mr. Gardner was again called into Ms. Johnson's office and informed that, because Ms. Richerson reported that Mr. Gardner was sexually harassing her to CCH's Human Resources Department, Ms. Johnson had been instructed to terminate his employment immediately. During this meeting, Mr. Gardner requested details of Ms. Richerson's allegations, but CCH refused to offer any information. Rather, Mr. Gardner was informed that his employment contract could be terminated for any reason. Mr. Gardner was left in shock and felt physically ill upon receiving the news.

25. Mr. Gardner denies having committed any unprofessional act or sexually harassing Ms. Richerson in any way.

26. CCH's failure to conduct an investigation is in violation of its own Non-Discrimination and Anti-Harassment policies. As of February 19, 2015, CCH's Non-Discrimination and Anti-Harassment Policy provided, in relevant part:

> Complaints **will** be promptly investigated in a fair and expeditious manner. The investigation **will** be conducted in such a way as to maintain confidentiality to the extent practical under the circumstances. The investigation **will** include a private interview with the person filing the complaint and any witnesses. **CCH will also interview the person or persons alleged to have committed the offending conduct**. When the investigation is completed, CCH[] **will**, to the extent appropriate, inform the person filing the complaint and the person(s) alleged to have committed the conduct about the results of the investigation.
>
> CCH will act promptly to eliminate discriminating conduct. Such action may range from counseling to termination from employment

>  and may include other remedial actions, as CCH[] deems appropriate under the circumstances.

(emphasis added).

27. Moreover, as of September 23, 2016, CCH amended its Code of Conduct/Non-Discrimination/Harassment policy to state, in relevant part:

> If the circumstances warrant an investigation, Human Resources **will** investigate the allegations, **typically including interviewing anyone identified as an offending individual** and witnesses who may have relevant information. The investigation will be undertaken promptly and will be handles as discreetly and with as much confidentiality as is reasonably possible. . . .

(emphasis added).

28. Mr. Gardener was not interviewed as part of any investigation into the allegations raised by Ms. Richerson. In fact, based on information and belief, no investigation, let alone a reasonable investigation, was conducted prior to Mr. Gardner's wrongful termination.

29. Mr. Gardner's manager, Ms. Johnson, and Ms. Richerson are both white females.

30. Based on information and belief, the employee within CCH's Human Resources Department who instructed Ms. Johnson to terminate Mr. Gardner was also female.

31. Since the date of Mr. Gardner's termination, Onward has requested details from CCH on multiple occasions regarding Ms. Richerson's sexual harassment allegations, but CCH has failed and refused to provide any substantive response.

32. On or about December 8, 2021, Mr. Gardner filed a Complaint for Discrimination against Defendants with the Massachusetts Commission Against Discrimination.

33. On or about May 20, 2022, Mr. Gardner moved to withdraw his MCAD Complaint for Discrimination in order to pursue a private right of action in civil court.

*Defendants Fail to Properly Compensate Mr. Gardner For On-Call Time*

34. Mr. Gardner is not an exempt employee under the Fair Labor Standards Act, 29 U.S.C. 201, *et seq*. ("the FLSA").

35. Defendants are not exempt employers under the FLSA.

36. While employed by Defendants, Mr. Gardner's regular rate of pay was twenty dollars ($20.00) per hour.

37. While employed by Defendants, Mr. Gardner worked substantial on-call time for which he was compensated at the rate of $3.00 or $4.00 per hour.

38. For example, Mr. Gardner worked approximately seven hundred and five (705) on-call hours during the final twelve weeks of his employment alone.

39. While on call, Mr. Gardner was required to be within thirty (30) minutes of the hospital, could not be under the influence of alcohol, received a call requiring him to go into the hospital on at least two separate occasions during most weeks, and could suffer adverse consequences in the event he did not report to work.

40. The $3.00 or $4.00 per hour on-call rate Mr. Gardner was below Mr. Garnder's regular rate of pay of $20.00 per hour, and below Massachusetts minimum wage at all relevant times.

41. On or about May 20, 2022, Mr. Gardner filed a non-payment of wage complaints against each of the Defendants with the Massachusetts Attorney General's Office.

42. On or about May 24, 2022, Mr. Gardner received a private right to sue letter from the Massachusetts Attorney General's Office in connection with the non-payment of wage complaint he filed against CCH.

43. On or about June 3, 2022, Mr. Gardner received a private right to sue letter from the Massachusetts Attorney General's Office in connection with the non-payment of wage complaint he filed against Onward.

## COUNT I
## RACE AND GENDER DISCRIMINATION
### (Gardner v. CCH)

44. Mr. Gardner repeats and incorporates by reference the allegations in Paragraphs 1 through 43 as if the same were fully set forth at length herein.

45. Mr. Gardner, who is a fifty-six (56) year old black man, was at all relevant times an employee of CCH.

46. Mr. Gardner suffered an adverse job action by virtue of CCH's termination of his employment in March 2021, after approximately seven (7) years of employment.

47. CCH bore discriminatory animus against Mr. Gardner, and that animus was the reason for his wrongful termination in March 2021. Mr. Gardner denied and continues to deny having committed any unprofessional act or sexually harassing Ms. Richerson in any way. As one of, if not the only black man within CCH's nursing/technician staff, Mr. Gardner was not provided the benefit of an investigation that, according to CCH's policy, "typically" included interviewing the alleged offending individual. Simply, Mr. Gardner was not provided this opportunity on the basis of his race and gender.

48. Based on information and belief, non-black employees of CCH were compensated at a higher hourly rate for time spent while on-call.

49. These actions constitute violations of G.L. c. 151B, § 4(1).

50. As a direct and proximate result of these violations, Mr. Gardner has suffered damages in an amount to be determined at trial, including, without limitation, punitive damages, attorneys' fees and costs.

## COUNT II
## FAILURE TO PAY OVERTIME IN VIOLATION OF FLSA
**(Gardner v. Defendants)**

51. Mr. Gardner repeats and incorporates by reference the allegations in Paragraphs 1 through 50 as if the same were fully set forth at length herein.

52. Throughout the entirety of his employment, Mr. Gardner frequently worked on-call time which exceeded forty (40) hours per workweek.

53. During the times that Mr. Gardner worked in excess of forty (40) hours in a week, Defendants failed and refused to pay Mr. Gardner at the rate of one-and-one half times his regular rate of pay of $20.00 per hour.

54. Section 7(a) of the FLSA, 29 U.S.C. § 207(a)(1), provides that employees shall be paid overtime compensation at a rate of not less than one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek.

55. Defendants have violated FLSA § 207(a)(1) by failing and refusing to compensate Mr. Gardner at a rate of not less than one-and-one-half times his regular rate of pay for all hours worked in excess of forty (40) hours in any given workweek, including in connection with on-call time.

56. Defendants' violations of the FLSA as alleged herein have been done in an intentional, willful, and bad faith manner.

57. As a direct and proximate result of the aforesaid willful violations of the FLSA, duly earned wages have been unlawfully withheld by the Defendants from Mr. Gardner for which

the Defendants are liable in an amount to be determined at trial, together with an additional equal amount as liquidated damages, interest, reasonable attorneys' fees, and costs.

58. Defendants are under a duty imposed by the FLSA, 29 U.S.C. § 211(c), to maintain and preserve payroll and other employment records with respect to Mr. Gardner from which the amounts of the Defendants' liability can be ascertained.

## COUNT III
## FAILURE TO PAY MINIMUM WAGE
### (Gardner v. Defendants)

59. Mr. Gardner repeats and incorporates by reference the allegations in Paragraphs 1 through 58 as if the same were fully set forth at length herein.

60. At all relevant times, Mr. Gardner was an employee of both Defendants.

61. At all relevant times, Mr. Gardner worked substantial on-call time including approximately 705 hours during the last 12 weeks of his employment alone.

62. At all relevant times, the Defendants deemed Mr. Gardner's on-call time as compensable, and compensated Mr. Gardner at the rate of $3.00 to $4.00 per hour.

63. The rate at which Defendants compensated Mr. Gardner for on-call time ($3.00 to $4.00 per hour) was below that of Mr. Gardner's regular rate of pay of $20.00 per hour, and below Massachusetts minimum wage at all relevant times.

64. Defendants' failure to pay Mr. Gardner at his regular rate of pay ($20.00 per hour), or at least at or above the Massachusetts minimum wage, constitutes a violation of G.L. c. 151, § 1 and 454 CMR 27.03.

65. As a direct and proximate result of Defendants' statutory violations, Mr. Gardner has suffered damages in an amount to be determined at trial, including, without limitation, treble damages, interest, attorneys' fees and costs.

## COUNT IV
## FAILURE TO TIMELY PAY WAGES
### (Gardner v. Defendants)

66. Mr. Gardner repeats and incorporates by reference the allegations in Paragraphs 1 through 65 as if the same were fully set forth at length herein.

67. At all relevant times, Mr. Gardner was an employee of both Defendants.

68. At all relevant times, Mr. Gardner worked substantial on-call time, including approximately 705 hours during the last twelve (12) weeks of his employment alone.

69. At all relevant times, the Defendants deemed Mr. Gardner's on-call time as compensable, and compensated Mr. Gardner at the rate of $3.00 to $4.00 per hour.

70. The rate at which Defendants compensated Mr. Gardner for on-call time ($3.00 to $4.00 per hour) was below that of Mr. Gardner's regular rate of pay of $20.00 per hour, and below Massachusetts minimum wage at all relevant times.

71. Defendants failed to pay Mr. Gardner weekly or bi-weekly the wages he earned in connection with his on-call time.

72. Defendants failed to pay Mr. Gardner the wages he earned in full on the following regular pay day for all on-call time worked in a workweek.

73. Defendants' failure to timely pay Mr. Gardner the wages he earned, and at the appropriate rate, for all on-call time worked constitutes a violation of G.L. c. 149, §§ 148, 150.

74. As a direct and proximate result of Defendants' statutory violations, Mr. Gardner has suffered damages in an amount to be determined at trial, including, without limitation, treble damages, interest, attorneys' fees and costs.

## COUNT V
## QUANTUM MERUIT
### (Gardner v. Defendants)

75. Mr. Gardner repeats and incorporates by reference the allegations in Paragraphs 1 through 74 as if the same were fully set forth at length herein.

76. As an open-heart surgical technician and/or operating room technologist, Mr. Gardner performed services for the benefit of the Defendants while on call.

77. Mr. Gardner rendered services while on call with the reasonable expectation of being compensated by the Defendants at his regular rate of pay of $20.00 per hour.

78. The Defendants, having reason to believe that Mr. Gardner was acting with the expectation of being compensated at his regular rate of pay, permitted Mr. Gardner to render on-call services without objection.

79. The Defendants have unjustly retained the benefit of Mr. Gardner's on-call services without compensating him at his regular rate of pay.

80. As a direct and proximate result of Defendants' actions, Mr. Gardner has suffered damages in an amount to be determined at trial.

## PRAYERS FOR RELIEF

**WHEREFORE**, Mr. Gardner respectfully requests that this Honorable Court:

i. Enter judgment in Mr. Gardner's favor and that he be awarded damages in an amount to be determined at trial, together with punitive damages, liquidated damages, treble damages, emotional distress damages, interest, reasonable attorneys' fees, and the costs of this action; and

ii. Grant such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Mr. Gardner demands a trial by jury on all claims so triable.

Dated: June 3, 2022                    Respectfully submitted,

**VANESS GARDNER**,
By his attorneys,


*/s/ Michael A. Bednarz*
Robert R. Berluti (BBO #039960)
Michael A. Bednarz (BBO #689047)
**BERLUTI MCLAUGHLIN & KUTCHIN LLP**
44 School Street, 9th Floor
Boston, MA 02108
Tel:    (617) 557-3030
Fax:    (617) 557-2939
Email:  rberluti@bmklegal.com
        mbednarz@bmklegal.com