UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VANESS GARDNER,
         Plaintiff,

         v.

CAPE COD HEALTHCARE, INC.,
and AMN SERVICES, LLC d/b/a
ONWARD HEALTHCARE,
         Defendants.

No. 22-cv-10855-PBS

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO QUASH
SUBPOENA AND FOR A PROTECTIVE ORDER

CABELL, U.S.M.J.

     Plaintiff Vaness Gardner ("Gardner"), a former operating room technologist at Cape Cod Hospital ("the hospital"), filed this race and gender discrimination action against defendant Cape Cod Healthcare, Inc ("CCH"), his alleged former employer, and defendant AMN Services, LLC d/b/a OnwardHealthcare ("AMN"), a healthcare staffing firm.[1]  (D. 1, ¶¶ 8-9, 11-12, 14).  In March

---

[1] As to Gardner's actual employer, his answers to CCH's first set of interrogatories reflect that CCH terminated his employment but elsewhere denote his joint employment with CCH and AMN.  (D. 27-2, Int. Nos. 2(1), 2(4)-(6), 2(9)-(10), 4, 6, 8).  CCH's answers to Gardner's interrogatories state that Gardner "was never an employee of Cape Cod Healthcare, Inc."  (D. 27-1, Int. No. 3).  Rather, "Gardner worked at [Cape Cod Hospital, Inc.] as a temporary 'Traveler' Operating Room Technician through AMN between April 28, 2019 and . . . March 18, 2021, when [Cape Cod Hospital, Inc.] terminated [his] Traveler assignment."  (D. 27-1, Int. No. 3).  The discrepancy regarding Gardner's employer as CCH and/or AMN is not material to the present discovery dispute.

2021, a female co-worker at the hospital reported Gardner for sexual harassment to CCH's human resources department.  (D. 1, ¶ 24).  Two weeks later, CCH terminated his employment assignment ostensibly due to sexual harassment and/or unprofessional conduct, which Gardner denied.  (D. 1, ¶¶ 24-25) (D. 27-2, Int. No. 4).

During discovery, AMN produced a document evidencing that Yale New Haven Hospital ("YNHH") ended Gardner's employment assignment in 2017 "for the same thing."  (D. 27, ¶ 6) (D. 27-4). As a result, CCH apparently served YNHH[2] with a subpoena seeking documents regarding the decision to terminate Gardner's employment assignment with YNHH.  (D. 24-1).  In response, Gardner filed a motion to quash the subpoena and for a protective order on the basis that the subpoena seeks irrelevant, confidential, and private information and is "plainly overbroad."  (D. 24).  Neither Gardner nor CCH served YNHH with a copy of the motion or CCH's opposition.[3]  (D. 24, p. 7) (D. 26, p. 8).  CCH argues in opposition that the requested information is relevant to:  (1) Gardner's "understanding of what constitutes unprofessional and/or sexually

---

[2] The only indication of service is a footnote in Gardner's supporting memorandum describing the attached subpoena as "served upon YNHH."  (D. 24, p. 1, n.1). Federal Rule of Civil Procedure 45(a)(4) requires CCH to serve Gardner with a copy of the subpoena before serving the subpoena on YNHH.

[3] In the interest of expediency, the court will rule on the motion.  This ruling requires a newly-served, modified subpoena.  Accordingly, YNHH is not obligated to respond to the existing subpoena, if in fact it was served.  Rather, once YNHH is served with the modified and narrowed subpoena allowed herein, it will have an opportunity to object and seek relief in "[t]he court for the district where compliance is required."  Fed. R. Civ. P. 45(d).

harassing conduct in the Workplace"; (2) Gardner's "credibility in denying that he ever engaged in the misconduct he was accused of at CCH"; and (3) Gardner's "alleged emotional distress."   (D. 26). For the reasons that follow, the motion to quash (D. 24) is denied without prejudice because this court is not "the court for the district where compliance is required."   Fed. R. Civ. P. 45(d)(3) ("Rule 45(d)(3)").   The motion for a protective order (D. 24) is allowed for a modified and narrowed subpoena and otherwise denied.

## I.   BACKGROUND

Gardner, "a fifty-six (56) year old black man and" United States Army veteran "previously diagnosed with post-traumatic stress disorder" ("PTSD"), worked at the hospital as an operating room technologist or technician from April 28, 2019 to March 18, 2021.   (D. 1, ¶¶ 7, 14-15) (D. 13, ¶¶ 7, 14-15) (D. 27-1, Int. No. 3).   He previously worked at the hospital, including in 2012.   (D. 1, ¶¶ 12, 15) (D. 13, ¶¶ 12, 15) (D. 27-1, Int. No. 7, first bullet point).   AMN contracts with CCH to provide staffing services, and in 2019 placed Gardner "into his old position as an operating room technologist."   (D. 1, ¶¶ 8, 10, 14) (D. 13, ¶¶ 8, 10, 14) (D. 10, ¶¶ 8, 10, 14).   The hospital "is an affiliate of CCH."   (D. 1, ¶ 10) (D. 10, ¶ 10) (D. 13, ¶ 10).   When Gardner began working at the hospital "in 2019, Operating Room Manager Lisa Johnson told him that he needed to be professional and it was not appropriate

for him to have dates with women or try to pick up women in the workplace." (D. 27-1, Int. No. 6).

On March 5, 2021, Gardner was working in the operating room with Registered Nurse Dena Richerson ("Richerson") and "observed she was upset about something."  (D. 1, ¶ 21).  Thereafter, Richerson reported that Gardner said "something inappropriate to her" and "was sexually harassing her" to Lisa Johnson ("Johnson"), Gardner's manager. (D. 1, ¶ 22). Richerson's reports of Gardner's conduct both in 2021 and prior to 2021 include allegations that: (1) he "made sexually suggestive sounds when she bent over"; (2) he approached her "from behind and stood uncomfortably close to her when they were alone in an operating room"; (3) in March 2021, he "called her a 'sexy librarian'" when she "was putting on her eyeglasses"; and (4) when "Richerson was standing near a physician," who commented that he did not realize how short she was, Gardner responded "by saying, 'She's the same standing up as she is lying down.'"[4]  (D. 27-1, Int. No. 7).  At some point, CCH learned about a report by Kammy Davis ("Davis"), an operating room surgical technician, that Gardner told her "he would pick up her call shift only when she went on a date with him." (D. 27-1, Int. No. 7).

---

[4] Relatedly, Richerson reported that in 2012 while working in the operating room at the hospital, Gardner "told her, 'If you weren't with somebody, and I wasn't with somebody, we'd be f****** each other.'"  (D. 27-1, Int. No. 7).

A few days after March 5, 2021, Johnson had a discussion with Gardner about Richerson's claim that he said something inappropriate and was sexually harassing Richerson. (D. 1, ¶ 22). Gardner immediately denied the allegation by responding that the "allegation was '100% a lie.'" (D. 1, ¶ 22).

On March 18, 2021, Johnson informed Gardner "that his Traveler assignment with CCH was ending" and that she "had been instructed to terminate his employment" purportedly because of Richerson's report. (D. 1, ¶ 24) (D. 27-1, Int. No. 8) (D. 27-2, Int. No. 4). The complaint alleges that Gardner was "in shock and felt physically ill upon receiving the news." (D. 1, ¶ 24). The following day, Gardner spoke with "Shannon Chambers of AMN" and "disputed the proffered reason(s) underlying the termination." (D. 27-2, Int. No. 4). Gardner also spoke with six CCH employees during this time-period and likewise "disputed the proffered reason(s) underlying the termination." (D. 27-2, Int. No. 4).

In answer to an interrogatory, Gardner states that he experienced emotional damage "[d]ue to CCH's discriminatory termination of his employment." (D. 27-2, Int. No. 6). His emotional damage or distress included "suicidal thoughts, severe anxiety, depression, nausea, sleeplessness and weight loss" of "approximately 25 pounds." (D. 27-2, Int. No. 6). Gardner also "began receiving counseling sessions twice per week." (D. 27-2, Int. No. 6). During these sessions, he "was informed that his

discriminatory termination exacerbated his PTSD." (D. 27-2, Int. No. 6). His exacerbated PTSD symptoms and heightened depression "remain[ed] ongoing" as of December 2022. (D. 27-2, pp. 8, 17).

In addition to race and gender discrimination under M.G.L. c. 151B, § 4(1) ("chapter 151B"), the complaint sets out claims for: (1) failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 207(a) (Count II); (2) failure to pay a minimum wage in violation of M.G.L. c. 151, § 1 (Count III); (3) failure to timely pay wages in violation of M.G.L. c. 149, §§ 149 and 150 (Count IV); and (4) quantum meruit (Count V). (D. 1). Gardner is not seeking front pay because he mitigated such damages through subsequent employment. (D. 27-2, Int. No. 8).

As indicated, AMN produced a document that YNHH ended Gardner's assignment in 2017 "for the same thing." (D. 27, ¶ 6) (D. 27-4). AMN also produced excerpts of an AMN Task Report related to Gardner's termination from the hospital. The excerpt reflects that Gardner "had this type of allegation in 2017 where," like here, "he denied any wrong doing." (D. 27-3). He also "admitted to asking people out" and was required to complete a sexual harassment course. (D. 27-3) (D. 27, ¶ 7).

 Against this backdrop, the subpoena seeks the following:

(1) All communications between [Gardner] and Yale New Haven Hospital ("YNHH") regarding the decision to terminate Gardner's employment or traveler assignment with YNHH, (2) all communications between YNHH and AMN Healthcare regarding the decision to terminate Gardner's employment or

traveler assignment with YNHH; (3) all disciplinary or coaching documents that contributed, either directly or indirectly, to the termination of Gardner's employment or travel assignment; (4) any documents reflecting YNHH's decision-making regarding Gardner's employment or traveler assignment with YNHH (such as internal investigation notes, interview notes, or an investigation report or summary); (5) a termination letter for Gardner, if one exists; and (6) Gardner's performance evaluation(s), if they exist.

(D. 24-1).  The subpoena duces tecum commands the keeper of the records of YNHH to produce the documents to the New Haven office of CCH's counsel.  (D. 24-1).

## II.  DISCUSSION

The motion seeks both to quash the subpoena under Rule 45(d)(3) and the entry of a protective order under Federal Rule of Civil Procedure 26(c) ("Rule 26(c)").  The court addresses each matter seriatim.

### A.  Rule 45

Federal Rule of Civil Procedure 45 ("Rule 45") instructs that third-party subpoenas "must issue from the court where the action is pending," Fed. R. Civ. P. 45(a)(2), whereas third-party "subpoena-related motions" are "filed in the district court where compliance is required." *Gebka v. EverQuote, Inc.*, Misc. Case No. 1:21-mc-91391-IT, 2021 WL 3131549, at *1 (D. Mass. July 23, 2021). More precisely, the language of Rule 45(d)(3) states:  "On timely motion, *the court for the district where compliance is required* must quash or modify a subpoena" under various grounds.  Fed. R. Civ. P. 45(d)(3) (emphasis added).

7

Captioned as the "Place of Compliance," Rule 45(c)(2)(A) sets
out the place of compliance for third-party subpoenas that seek,
*inter alia*, production of documents.  *See* Fed. R. Civ. P. 45(f)
advisory committee's notes to 2013 amendment (Under Rule 45(d)(3),
"subpoena-related motions and applications are to be made to the
court where compliance is required *under Rule 45(c)*.") (emphasis
added).[5]  Relatedly, a third-party "subpoena may command . . .
production of documents . . . at a place within 100 miles of where
the person resides, is employed, or regularly transacts business
in person."  Fed. R. Civ. P. 45(c)(2).

In *Merchant Consulting Group, Inc. v. Beckpat, LLC*, Civil
Action No. 17-11405-PBS, 2018 WL 4510269 (D. Mass. July 11, 2018),
the court discussed at length the two different interpretations of
"the court for the district where compliance is required":  (1)
the court where the subpoena requires the production of the
documents; and (2) the court where the subpoena target is located.[6]
*Id.* at *2-3.  Here, the YNHH subpoena's designation of the place
of the production of the documents (265 Church Street, New Haven,

---

[5] Rule 45(f) allows the court where compliance is required to transfer a Rule 45(d)(3) motion to the court issuing the subpoena under certain circumstances. Fed. R. Civ. P. 45(f) (When "court where compliance is required did not issue the subpoena, it may transfer a motion . . . to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances.").

[6] Although the *Merchant Consulting* court addressed the phrase set out in Rule 45(g), the phrase in Rule 45(d)(3) is identical.  *See Powerex Corp. v. Reliant Energy Services, Inc.*, 551 U.S. 224, 232 (2007) ("identical words and phrases within the same statute should normally be given the same meaning").

Connecticut) and the location of the subpoena target (20 York Street, New Haven, Connecticut) are in close proximity. Taking judicial notice of distances, both locations are more than 100 miles from this court. *See* https://www.distance-cities.com/distance-new-haven-ct-to-boston-ma; *see generally Pazol v. Tough Mudder Inc.*, 819 F.3d 548, 550 & n.1 (1st Cir. 2016) (taking judicial notice of distance between Haverhill and Amesbury, Massachusetts) (citation omitted); *Jones v. Jasper Wyman & Son*, No. 1:20-cv-00383-JAW, 2022 WL 2802889, at *13 n.31 (D. Me. July 18, 2022) ("Courts commonly use internet mapping tools to take judicial notice of distance and geography.") (citation omitted). Moreover, expanding the interpretations of the phrase to encompass the corporate headquarters of Yale New Haven Hospital, Inc., that location is also 20 York Street in New Haven.[7] *See Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (finding U.S. District Court for Northern District of California was compliance court because "it is within 100 miles of where . . . Google is headquartered" and where "Google's custodians of records reside . . . and . . . produced records . . . .").

---

[7] A court may take judicial notice of a company's corporate headquarters on government and corporate websites. *See Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 901 n.7 (N.D. Tex. 2020) ("Information obtained from online sources is becoming a frequently used basis for judicial notice. To this point, government and corporate websites and well-recognized mapping services are among the most commonly relied upon sources." (quoting 2 *McCormick on Evid.* § 330 (7th ed. 2016))). The corporate headquarters of Yale New Haven Hospital, Inc. is 20 York Street in New Haven. *See* https://www.globaldata.com/company-profile/yale-new-haven-hospital-inc.

Accordingly, this court is not the compliance court and the motion to quash or modify the third-party subpoena under Rule 45(d)(3) "is thus not properly before this court."[8]  *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, Case No. 6:16-cv-366-PGB-LHP, 2022 WL 1239237, at *1 (M.D. Fla. Feb. 16, 2022) (collecting cases); *see Dental Res. Sys., Inc. v. Ashcraft*, No. 3:20-cv-2085-BN, 2021 WL 3772688, at *1 (N.D. Tex. Mar. 11, 2021) (stating "this Court has no basis or authority to address the subpoenas under Rule 45(d)(3)" because it is not "court for the district where compliance is required as to the subpoena at issue"); *see also Europlay,* 323 F.R.D. at 630 (finding Central District of California court had no jurisdiction because Northern District of California court, located within 100 miles of corporate headquarters of subpoena target, was court where compliance is required); *see generally In re Blue Cross Blue Shield Antitrust Litig.*, Case No. 2:13-cv-20000-RDP, 2017 WL 11539533, at *2 n.1 (N.D. Ala. Dec. 4, 2017) ("Prior to the 2013 Amendments, Rule 45 required subpoenas to issue 'from the court for the district where the production or inspection [was] to be made' and compliance "was sought in the district where the subpoena was issued."").  Rather, based on the above, uniform New Haven locations, the "court for the district

---

[8] Although neither party raises the issue regarding the compliance court, the court does so *sua sponte* because it concerns the court's authority to adjudicate the motion to quash the subpoena under Rule 45(d)(3).

10

where compliance is required," Fed. R. Civ. P. 45(d)(3), is the United States District Court for the District of Connecticut.

Per the foregoing, it is therefore appropriate to address the subpoena and the parties' arguments under Rule 26(c) rather than under Rule 45(d)(3). *See Katz v. Liberty Power Corp., LLC*, Civil Action No. 18-cv-10506-ADB, 2019 WL 957129, at *3 (D. Mass. Feb. 27, 2019) (Although "motion to quash subpoena would be more properly filed in District of Columbia the United States District Court where performance is required, *see* Fed. R. Civ. P. 45(d)(3), this Court retains jurisdiction to restrict the scope of discovery and issue protective orders in accordance with Rule 26.") (citing Federal Rule of Civil Procedure 26(b)(2)(C) and addressing motion for protective order).

**B.  Rule 26(c)**

As noted, the plaintiff seeks a protective order under Rule 26(c) precluding the discovery requested in the YNHH subpoena as irrelevant, confidential and private information, and overbroad. (D. 24).  In response, CCH maintains the information is relevant and "proportional to the needs of [this] case."  (D. 26).

Rule 26(c) allows a party to move for a protective order and authorizes the court "for good cause" shown to "issue an order protect[ing] a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The burden is on the plaintiff to show good cause. *Heagney v.*

*Wong*, Civil Action No. 15-40024-TSH, 2016 WL 2901731, at *3 (D. Mass. May 18, 2016) (citation omitted).  "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."  *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986); *see also Gill v. Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391, 402 (1st Cir. 2005) (describing good cause as flexible standard requiring "'individualized balancing of the many interests that may be present'") (citation omitted).

Moreover, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *accord Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993) ("great deference is shown to the district judge in framing and administering" protective orders) (citations omitted).  The order may forbid the discovery, or forbid "inquiry into certain matters, or limit[] the scope of disclosure or discovery."  Fed. R. Civ. P. 26(c)(1).

With respect to CCH's relevancy and proportionality arguments, Federal Rule of Civil Procedure 26(b)(2)(C) ("Rule 26(b)(2)(C)") requires the court, "[o]n motion or on its own," to "limit the frequency or extent of discovery otherwise allowable by these rules . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)," i.e., not

relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(2)(C)(iii). Notably, courts utilize Rule 26(b)(2)(C) in addressing motions for a protective order. *See Controlled Kinematics, Inc. v. Novanta Corp.*, Civil Action No. 17-cv-11029-ADB, 2019 WL 3082354, at *6-7 (D. Mass. July 15, 2019) (relying on Rule 26(b)(2)(C)(i) in adjudicating Rule 26(c) motion for protective order); *accord Katz*, 2019 WL 957129, at *3; *see also Hoffman v. Thras.io, Inc.*, Civil Action No. 20-12224-PBS, 2021 WL 7369183, at *3 (D. Mass. Oct. 7, 2021); *see generally Theidon v. Harvard Univ.*, 314 F.R.D. 333, 335 (D. Mass. 2016).

The plaintiff and CCH dispute the relevancy of the information sought in the subpoena. Relevance is "broadly construed at the discovery stage." *Cabi v. Boston Children's Hospital*, No. 15-cv-12306-DJC, 2017 WL 8232179, at *2 (D. Mass. June 21, 2017) (quoting *Green v. Cosby*, 152 F. Supp. 3d 31, 35 (D. Mass. 2015)). Specifically, a party may obtain documents that are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) ("Rule 26(b)(1)"). The requested information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Here, Gardner's credibility is central to the veracity of whether he experienced the significant emotional distress he espouses. *See Hardy v. UPS Ground Freight, Inc.*, Civil Action No. 17-30162-MGM, 2018 WL 6832083, at *2-3 (D. Mass. Dec. 27, 2018) (finding no good cause for protective order precluding deposition

of plaintiff's mother encompassing, *inter alia*, plaintiff's emotionally difficult relationship with stepfather 25 years earlier and finding this topic and two others relevant to "important issue" of emotional distress damages in chapter 151B retaliation case against employer).  To be sure, Gardner's argument that the circumstances of his separation from YNHH in early 2017 is irrelevant is not without reason or support.  *See Hardy*, 2018 WL 6832083, at *3 (noting "[s]ome courts have found a lack of relevance when events are remote in time or have found that confidentiality interests outweigh a defendant's interest in access to the information" and "placed limits on such discovery") (citing *EEOC v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, 2-3 (D. Mass. 2014) ).  Under the circumstances here, however, it fails to persuade, particularly in light of the severity of Gardner's claimed emotional distress.  As noted, his emotional distress included suicidal thoughts, nausea, the 25-pound weight loss, severe anxiety, twice-weekly counseling sessions, and exacerbation of his PTSD.

Further, the requested discovery is likely to reveal documents that bear on and/or potentially challenge the plaintiff's credibility.  For example, because Gardner was "canceled at [YNHH] for the same thing" CCH terminated his assignment at the hospital (D. 27-4), the records sought in the subpoena may reflect Gardner's response to allegations of sexual

harassment and misconduct at YNHH, including whether, or to what extent, his emotional condition was impacted.[9]  The information is therefore relevant to Gardner's race and gender discrimination claims and CCH's defense to those claims under Rule 26(b)(1) because of the prospect of substantial emotional distress damages for these claims.

Accordingly, the subpoena's first category (communications between Gardner and YNHH "regarding the decision to terminate Gardner's employment or traveller assignment with YNHH") and the subpoena's second category (communications between YNHH and AMN "regarding the decision to terminate Gardner's employment or traveller assignment with YNHH") seek relevant information.

Exercising the court's authority under Rule 26(b)(2)(C)(iii), the discovery requested in these two categories is proportional to the needs of this case.  "[T]he amount in controversy," Fed. R. Civ. P. 26(b)(1), for the emotional distress damages Gardner describes to support recovery under the race and gender discrimination claims is likely significant.  The "importance of the discovery in resolving the issues," Fed. R. Civ. P. 26(b)(1), regarding the race and gender discrimination claims further renders the foregoing discovery proportional to the needs of this case.  *See Hardy*, 2018 WL 6832083, at *2-3 (quoting Rule 26(b)(1)

---

[9] Whereas the admission of such evidence at trial may give rise to improper propensity evidence, *see* Fed. R. Evid. 404(b)(1), discovery is not limited to admissible evidence.  *See* Fed. R. Civ. P. 26(b)(1).

and, although recognizing "merit in Plaintiff's position" regarding remote events, nonetheless allowing discovery and denying protective order and motion to quash subpoena).  Taking into account Gardner's privacy and confidentiality concerns regarding the discovery of his YNHH employment records, including any personnel file, the discovery in the subpoena's first and second categories outweigh Gardner's privacy and confidentiality interests.[10]

Turning to the subpoena's remaining categories, category one encompasses the termination letter sought in category five.  As such, category five is "unreasonably cumulative or duplicative" of the discovery allowed in category one.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Category four overlaps the information sought in the first and second categories and, in this regard, the discovery is likewise "unreasonably cumulative or duplicative" under Rule 26(b)(2)(C)(i).  Category four is otherwise overbroad and not proportional to the needs of this case because it seeks "any documents reflecting YNHH's decision-making regarding Gardner's" entire "employment or traveler assignment with YNHH."[11]  (D. 24-1); *see Elevate Group, LLC v. DataScience.codes, LLC*, Civil Action No. 1:20-12084-PBS, 2021 WL 6108288, at *5 (D. Mass. Nov. 23, 2021)

---

[10] The parties should, however, consider restricting any production of the subpoenaed discovery to avoid public disclosure.

[11] Although category four identifies examples of specific documents, the category is not limited to these documents.

(denying discovery in two categories as "overbroad and not proportional to the needs of the case" under Rule 26(b)(1)); *Bobba v. Patel*, Civil Case No. 3:19-30171-MGM, 2021 WL 1907460, at *4 n.2 (D. Mass. May 12, 2021) (denying request for all personal and business bank statements over two-year period as "overbroad and . . . not proportional to the needs of the case" as well as irrelevant); *Doe v. Holly*, Civil No. 20-10139-LTS, 2021 WL 1700765, at *3 (D. Mass. Apr. 29, 2021) ("Given that Defendants have already turned over the bullying prevention policies[,] . . . Plaintiffs' request for 'any other documents' is overbroad and otherwise not 'proportional to the needs of the case'" under Rule 26(b)(1)). Gardner's performance evaluations at YNHH (category six) as well as disciplinary and coaching documents that contributed to Gardner's termination of employment or traveler assignment with YNHH (category three) capture documents encompassed in the first category (communications between Gardner and YNHH regarding the termination decision). These two categories are otherwise overbroad. Accordingly, the documents in the third and sixth categories are "unreasonably cumulative or duplicative" under Rule 26(b)(2)(C)(i) and are otherwise overbroad and not proportionate to the needs of this case under Rule 26(b)(1). In sum, the subpoena is narrowed to categories one and two.

As a final matter, the plaintiff relies upon and repeatedly cites *Smith v. Turbocombustor Tech., Inc.*, 338 F.R.D. 174 (D. Mass.

2021).   (D. 24).   The plaintiff in *Smith* alleged that the defendant, his former employer, terminated him for poor job performance one month before an operation, for which he needed four weeks off to recover, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. *Id.* at 175-176.   The defendant sought to subpoena documents from the plaintiff's employers prior to his employment with the defendant and his employers after the termination. *Id.* at 176.   The court determined that information about the plaintiff's performance in prior jobs was not relevant to whether his job performance for the defendant was substandard. *See id.* at 177-178 (denying   discovery from past employers).

The decision in *Smith* is distinguishable.   First, the subpoenas in *Smith* broadly requested "all documents concerning the hiring," promotion, demotion, termination, job performance, attendance, and compensation from multiple past employers dating back eleven years. *See id.* at 176.   The court therefore considered the requests overbroad and "not sufficiently relevant" to warrant production. *Id.* at 177.   Here, the YNHH subpoena targets one employer and, as narrowed, only discovery regarding two discrete categories of information pertaining to the decision to terminate Gardner's employment or traveler assignment with YNHH in 2017.

Second, unlike the record in *Smith*, the record here includes specific facts which directly connect the reason for the

termination to the same reason the prior employer terminated Gardner's employment. Although the defendant in *Smith* argued that the discovery may lead to prior inconsistent statements by the plaintiff, the defendant did not provide a factual basis in the record for this belief, such as the AMN documents that CCH provides in this action. *See* Defendant's Opposition to Motion for Protective Order, *Smith v. Turbocombustor Tech., Inc.*, Civil Action No. 20-11094-MLW (D. Mass. May 7, 2021); *see also Chamberlain v. Farmington Sav. Bank*, Civil No. 3:06CV01437 (CFD), 2007 WL 2786421, at *3 (D. Conn. Sept. 25, 2007) (quashing subpoena to prior employers where defendant did not provide factual evidence to suggest plaintiff misrepresented prior work performance experience to implicate his credibility as basis to justify document production). Further, the discrete and narrow categories allowed by this court are directly relevant to the central issue of Gardner's credibility, which is material to, *inter alia*, the potentially sizable damages for emotional distress. In contrast, the unsubstantiated suggestion by the defendant in *Smith* "that the subpoenas [sought] information relevant to Smith's credibility" did not justify the wide-ranging broad search of his employment records. *Id.* at 177 n.4 (citation omitted).

Third, the defendant in *Smith* terminated the plaintiff for poor job performance. Here, CCH terminated Gardner's employment or traveler assignment for engaging in unprofessional and sexually

harassing conduct, which juxtaposes Gardner's credibility against Richerson's credibility.    Importantly,    Gardner's testimony regarding his emotional distress damages turns upon his credibility.

In all, the circumstances and factual record before this court warrant narrowing the subpoena to the first two categories.  As explained above, Gardner sufficiently shows good cause to deny discovery for categories three through six.  *See generally Layman v. Junior Players Golf Acad., Inc.*, 314 F.R.D. 379, 385 (D.S.C. 2016) ("given the nature and breadth of the documents requested," the defendant "will be subjected to undue burden," which is an interest "sufficient to satisfy" Rule 26(c)) (citation omitted); *Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 242 n.3 (E.D. Va. 2012) (finding sufficient demonstration of facts as opposed to speculation to warrant Rule 26(c) protective order regarding subpoenas based on showing of overbreadth).[12]

---

[12] Separately, assuming this court's authority to adjudicate Gardner's motion to quash, this court would reach the same conclusion regarding the modification and narrowing of the YNHH subpoena under Rule 45.  By way of explanation, Gardner sufficiently shows a personal right or privilege in the information sought from his employment records at YNHH to have standing to quash the third-party subpoena.  *See Cabi,* 2017 WL 8232179, at *2 (recognizing "general rule" that party lacks standing to quash third-party subpoena absent privilege or privacy interest, which "'need not be weighty' and is met where" party shows "*some* personal right or privilege in the information sought'") (citation omitted); *Texas Roadhouse,* 303 F.R.D. at 2-3  ("[P]arty has 'personal right' with respect to employment records.") (citation omitted).  Additionally, "[a] Rule 45 subpoena must fall within the scope of proper discovery under Rule 26(b)(1)," *Enargy Power (Shenzhen) Co. Ltd. v. Xiaolong Wang*, No. 13-11348-DJC, 2014 WL 4687784, at *2 (D. Mass. Sept. 17, 2014) (citation omitted), and under Rule 26(b)(2).  *See Cumby v. Am. Med. Response, Inc.*, Case No. 3:18-cv-30050-MGM, 2019 WL 1118103, at *3 (D. Mass. Mar. 11, 2019) (recognizing Rule 26(b)(2) limits discovery in context of addressing Rule 45 third-party subpoenas).

III.   **CONCLUSION**

In accordance with the foregoing discussion, the motion to quash (D. 24) is **DENIED** without prejudice, and the motion for a protective order (D. 24) is **ALLOWED** in part and **DENIED** in part.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  May 9, 2023

---

Largely for the reasons elaborated above in Roman numeral II(B) relative to Rules 26(b)(1) and (2)(C), the result is the same.